**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **PHILLIP STRZALKOWSKI,** : | |
| : | |
| Plaintiff, : | Case No. 2:22-cv-00156 |
| : | |
| v. : | Chief Judge Algenon L. Marbley |
| : | |
| **MARY ANN TOWNSHIP,** : | Magistrate Judge Kimberly A. Jolson |
| : | |
| Defendant. : | |

**OPINION & ORDER**

This matter comes before the Court on the Motion for Partial Summary Judgment of Defendant Mary Ann Township (ECF No. 17) and the Motion for Partial Summary Judgment of Plaintiff Phillip Strzalkowski (ECF No. 18). For the reasons set forth below, this Court **GRANTS** Defendant's Motion for Partial Summary Judgment (ECF No. 17) and **DENIES** Plaintiff's Motion for Partial Summary Judgment (ECF No. 18).

**I.  BACKGROUND**

The basic facts of this case are not in dispute, as the parties have submitted a Joint Stipulation of Fact and Law, setting out the relevant background information. The parties also agree upon the threshold question of law presented in this case. Typically, the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. §§ 201–19, requires overtime pay for employees who work more than forty (40) hours in a week. *See id.* § 207(a). FLSA also includes a provision that allows certain fire protection and law enforcement agencies to calculate overtime differently. *See id.* § 207(k). The exemption from the 40-hour overtime standard applies for any employee "who— (1) is trained in fire suppression, has the legal authority and responsibility to

1

engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State." 29 U.S.C. § 203(y). In this case, Mary Ann Township believes that its firefighters, including Plaintiff, are exempt from the standard overtime provision and are subject instead to the special overtime provision in 29 U.S.C. § 207(k) because it is a "municipality" within the meaning of the above-quoted provision. Phillip Strzalkowski, on the other hand, argues that Mary Ann Township, as an unincorporated civil township, is not a municipality and therefore must pay its firefighters according to the standard FLSA overtime requirement. This disagreement turns on a question of statutory interpretation: is Mary Ann Township a municipality as defined in § 3(y) of FLSA?

### A. Factual Background

In the state of Ohio, civil townships are the basic units of local government. The entire state is covered by townships, except where a township is coterminous with a city or village; in such cases, the township offices are automatically abolished and consolidated with those of the city or village. OHIO REV. CODE § 703.22; U.S. CENSUS BUREAU, DEP'T OF COMMERCE, INDIVIDUAL STATE DESCRIPTIONS: 2007 at 235, https://www2.census.gov/govs/cog/isd_book.pdf. Townships are unincorporated, but can form a municipal corporation, like a city or village, if the local population votes to organize formally. Townships have limited authority in comparison to municipal corporations, but are authorized by law to perform a subset of the basic functions associated with local self-government (including road maintenance and repair, police and fire protection, and zoning), *see* OHIO REV. CODE tit. V; *see also About Townships*, OHIO TOWNSHIP ASSOC., https://www.ohiotownships.org/ohio-townships-101, and are granted some powers of local autonomy, including governance by an elected board of trustees and the power to levy property taxes. *See* OHIO REV. CODE § 503.01; *id.* ch. 505. Larger townships (i.e., with a

population of 2,500 or more) are authorized to adopt a limited home rule government. *See id.* § 504.01.

Mary Ann Township is an unincorporated civil township organized under Ohio Rev. Code § 503.01, located in northeastern Licking County, Ohio. (Def.'s Mot. Summ. J. at 1, ECF No. 17). Phillip Strzalkowski began working as a firefighter with the township's professional fire department in 2015. (Joint Stipulation of Fact and Law, ECF No. 14 ¶ 1). Initially, he served as a volunteer firefighter, then moved to a part-time professional position. (*Id.* ¶ 2). He became a full-time employee of the Mary Ann Township Fire Department in 2019, and continued in that role until August 9, 2021. (*Id.*). As a firefighter, Strzalkowski was trained in fire suppression, had the legal authority and responsibility to engage in fire suppression, and was engaged in the work of preventing, controlling, and extinguishing fires and responding to emergency situations where life, property, or the environment were at risk. (*Id.* ¶ 3).

Strzalkowski was compensated at an hourly wage, paid bimonthly. (*Id.* ¶¶ 5, 7). He often worked more than 40 hours per week, and was given overtime pay (i.e., time-and-a-half pay, or 1.5 times his regular hourly wages) for time worked in excess of 106 hours during each two-week work period.[1] (*Id.* ¶ 7).

### B. Procedural Background

Plaintiff Phillip Strzalkowski filed this action on January 18, 2022, alleging that Defendant Mary Ann Township violated the overtime provision of the Fair Labor Standards Act. The parties filed a joint stipulation of facts in early May 2022. (ECF No. 14). Parties then

---

[1] Strzalkowski notes in his Motion for Summary Judgment (ECF No. 18) that he "does not concede that Mary Ann Township paid [him] all the overtime he is owed, even under the partial exemption from overtime described in 29 U.S.C. § 207(k)." (ECF No. 18 at 4). The parties jointly stipulated that "Strzalkowski received . . . overtime at one and one half times his regular rate for all hours worked in excess of 106 hours in a work period." (ECF No. 14 ¶ 7). Neither party here has presented evidence supporting or disproving Strzalkowski's assertion that he was not paid overtime in compliance with 29 U.S.C. § 207(k).

submitted cross-motions for partial summary judgment on the threshold question of whether Mary Ann Township is a municipality under § 3(y) of FLSA and, thus, whether Mary Ann Township may compensate Strzalkowski according to the partial overtime exemption in § 7(k). (*See* ECF Nos. 17, 18). The motions are now ripe for this Court's review.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) states, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." In evaluating a motion for summary judgment, the Court must view the evidence in the light most favorable to the nonmoving party, and draw all reasonable inferences in the non-movant's favor. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013) (citing *Tysinger v. Police Dep't of City of Zanesville*, 463 F.3d 569, 572 (6th Cir. 2006)). This Court then asks "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden,* 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 251–52 (1986)). But "if the evidence is such that a reasonable jury could return a verdict for the non-moving party," the court must find that there is a "genuine" dispute of material fact and that summary judgment is inappropriate. *Anderson*, 477 U.S. at 248. Evidence that is "merely colorable" or "not significantly probative," however, is not enough to defeat summary judgment. *Id.* at 249–50. Nor will "[t]he mere existence of a scintilla of evidence to support [the non-moving party's] position" be sufficient to overcome such a motion. *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995).

The initial burden rests upon the movant to present the Court with law and argument in support of its motion, and to identify the relevant portions of "'the pleadings, depositions,

4

answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56). If this initial burden is satisfied, the burden then shifts to the nonmoving party to set forth specific facts showing that there remains a genuine issue for trial. *See* Fed. R. Civ. P. 56(e); *see also Cox v. Ky. Dep't of Transp.*, 53 F.3d 146, 150 (6th Cir. 1995) (noting that after the burden shifts, the nonmovant must "produce evidence that results in a conflict of material fact to be resolved by a jury").

Where the parties have filed cross-motions for summary judgment, each party bears the responsibility of meeting its burden to demonstrate that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. The standard of review for cross-motions does not differ from the standard applied by this Court where only one party moves for summary judgment. *Taft Broad Co. v. United States*, 929 F.2d 240, 248 (6th Cir. 1991).

### III. LAW & ANALYSIS

This case presents a threshold question of law: does a civil township, organized under Ohio Rev. Code § 503.01, qualify as "a municipality, county, fire district, or State" pursuant to § 3(y) of the Fair Labor Standards Act? The question has implications for the 1,308 townships in Ohio that are not co-extensive with cities or villages, and the millions of residents of those townships; the answer affects how such townships calculate overtime pay for firefighters.

FLSA mandates overtime pay for employees who work in excess of forty (40) hours per week. 29 U.S.C. § 207(a)(1). For a special category of employees, however, overtime pay only begins to accrue for work in excess of 216 hours in a 28-day work period (or the equivalent ratio

of hours for a shorter work period, such as 108 hours over a 14-day work period).[2] *Id.* § 207(k). The special category includes employees engaged in "fire protection services," defined as any:

> employee, including a firefighter . . . , who—
>
> (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district or State; and
>
> (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

*Id.* § 203(y). This is known as the "§ 7(k) exemption," the "firefighter overtime exemption," or, generally, as a "partial overtime exemption."[3] Here, there is no dispute that Strzalkowski performed job duties that would fall within the statutory definition set forth above. (*See* ECF No. 14 ¶ 3). Instead, the issue is whether Mary Ann Township is a "municipality, county, fire district or State."

If an Ohio civil township is a "municipality, county, fire district or State" within the meaning of § 3(y) of FLSA, it would be allowed to pay their firefighters overtime wages only for hours worked in excess of 216 hours over a 28 day period (in effect, 54 hours per week),[4] pursuant to the § 7(k) exemption. But if a civil township is not a "municipality, county, fire district or State," it must pay firefighters overtime wages for time worked in excess of 40 hours per week pursuant to the standard overtime rule in § 7(a). Thus, whether a civil township falls within the definition of § 3(y) substantially affects how much a township must pay firefighters in

---

[2] The 216-hour standard has been replaced by a 212-hour standard for fire protection employees, pursuant to regulation. *See* 29 C.F.R. §§ 553.200–01. Thus, fire protection personnel are paid overtime for work in excess of 212 hours over a 28-day period (or, for example, 106 hours in a 14-day period). (*See* ECF No. 14 ¶ 7).

[3] Defendant Mary Ann Township points out that § 7(k) is properly characterized as an alternative way of calculating overtime, not a FLSA exemption. *See* 29 U.S.C. § 213 (listing exemptions). Although Defendant's clarification is well-taken, this Court adheres to the more commonly-used "exemption" label for the sake of consistency, in accord with the terminology used by the Department of Labor and members of Congress. *See infra.*

[4] As noted above, *see supra* n.2, Department of Labor regulations have modified this provision such that the exemption requires overtime pay for work in excess of 212 hours over a 28-day period (or 53 hours per week).

overtime wages and thus a township's costs of providing fire protection services. The question of whether unincorporated governments are within the meaning of 29 U.S.C. § 203(y) and, consequently, covered by the partial overtime exemption in 29 U.S.C. § 7(k) has not yet been examined by federal courts.[5]

### A. Statutory Text

The Court's analysis begins with the language of the statute itself. *See Hudson v. Reno*, 130 F.3d 1193, 1199 (6th Cir. 1997). There is little dispute that Mary Ann Township is not a county, fire district, or State. (*See* Pl.'s Mot. Summ. J., ECF No. 18 at 4). The closer question is whether an Ohio civil township is a municipality. It is not enough, of course, that the words "township" and "municipality" have different meanings (*see id.*), as the definition of "municipality" could include townships. The parties have provided several sources defining "municipality." According to the Bouvier Law Dictionary, a municipality is: "a city, town, village or any other community that is incorporated as a municipal corporation by the state in which it exists." (ECF No. 18 at 5 (quoting *Municipality*, BOUVIER LAW DICTIONARY (2012))). Or, according to Black's Law Dictionary: "'a city, town or *other local political entity* with the powers of self-government' and [] 'the community under the jurisdiction of a city's or

---

[5] Courts have considered various questions about the scope of § 3(y), including whether private organizations engaged in public fire protection services may avail themselves of the § 7(k) exemption, *see In re Lower Merion Twp. Fire Dep't Lab. Standards Litig.*, 972 F. Supp. 315, 324 (E.D. Penn. 1997); *see also* 29 C.F.R. § 553.202 (2022), certain employees performed fire protection services, *see Lawrence v. City of Philadelphia*, 527 F.3d 299, (3rd Cir. 2008) (discussing if fire service paramedics had the "responsibility to engage in fire suppression"); *Haro v. City of Los Angeles*, 745 F.3d 1249 (9th Cir. 2014) (assessing whether employees were "engaged in fire protection"); *Diaz v. City of Plantation*, 524 F. Supp. 2d 1352 (S.D. Fla. 2006), or firefighters were "employed by a fire department." *See Kipple v. Monroe County*, 847 F. Supp. 2d 471 (W.D. N.Y. 2012). It does not appear, however, that courts have analyzed the scope of § 3(y) with respect to the definition of "municipality."
  None of the cases mentioned here are relevant to this case. Mary Ann Township is certainly not a private organization, *see generally* OHIO REV. CODE tit. V, and the parties have jointly stipulated that Strzalkowski's job responsibilities fell within the duties of fire protection services personnel specified in 29 U.S.C. § 203(y).

*township's* government.'" (ECF No. 17 at 8 (quoting *Municipality*, BLACK'S LAW DICTIONARY (11th ed. 2019)) (emphasis in original)).

The key distinction between the definitions provided by the parties appears to be the question of incorporation: Mary Ann Township suggests that all "first-level, local governments" fall under the label of "municipality,"[6] whereas Strzalkowski's proposed definition limits "municipality" to those local governments that are incorporated. (*See* ECF No. 21 at 4). Both definitions are plausible as a matter of ordinary meaning, as indicated in the dictionaries cited above, and a survey of other sources fails to settle the debate. *Compare Municipality*, MERRIAM-WEBSTER DICTIONARY (2022) (referring to "corporate status" in defining municipality), *with Municipality*, OXFORD ENGLISH DICTIONARY (2022) (defining municipality without referencing incorporation), *and* State and Local Government, THE WHITE HOUSE, https://www.whitehouse.gov/about-the-white-house/our-government/state-local-government/ ("Municipalities can be structured in many ways, as defined by State constitutions, and are called, variously, townships, villages, boroughs, cities, or towns."). The fact that townships are defined separately from municipalities under the Ohio Constitution and treated differently under Ohio law speaks only to the relevant definitions under state law, which do not bear on the meaning of a federal statute. (*See* ECF Nos. 18 at 5 (citing OHIO CONST. art. X, § 1; *id.* art. XXVIII § 2); 23 at 6–7 (citing *Dickerson v. New Banner Inst., Inc.*, 460 U.S. 103, 119–20

---

[6] Plaintiff suggests that it is unclear what Defendant means by "first-level, local governments." (*See* ECF No. 24 at 3). In this context, the Court understands Defendant as referring to the lowest tier of governmental administration within a state. In Ohio, for example, a township would be a first-level, local government and a county is a second- or intermediate-level government. A "parish" in Louisiana or a "borough" in Alaska, to borrow examples used by Defendant, are second-level governments in those states. Of course, Plaintiff's confusion may stem from the fact that the intermediate-level divisions of states (i.e., counties, parishes, or boroughs) are sometimes referred to as "first-order" administrative subdivisions.

(1983))). In short, dictionary definitions are inadequate to determine whether the meaning of "municipality" in § 3(y) encompasses unincorporated local governments.

Nor does the structure of the statute indicate that Congress intended either to exclude or to include unincorporated local governments within the meaning of "municipality." Strzalkowski, implicitly invoking the rule against superfluities, suggests that if "municipality" is understood to include all "first-level, local governments," then the remainder of the language in § 3(y) about counties, fire districts, or states would be unnecessary. (ECF No. 24 at 3). But this argument misunderstands Defendant's proposed definition. "First-level, local governments" refer to the lowest level of government subdivision within a state, typically towns and cities. A fire district is not a local government, though it may be a department of a local government. Counties are not first-level, local governments; they are typically classified as second-level administrative subdivisions, since there are even smaller subdivisions of local authority within counties. The same is true of states. Accepting Defendant's definition of "municipality" would not render the remaining language in the statute superfluous, as each of the other three categories listed in § 3(y) are distinct from "first-level, local governments."

Moreover, there is real danger in formulaically applying the canons of statutory interpretation. For example, empirical evidence suggests that the rule against superfluities is rarely an actual consideration in drafting federal statutes, in part because "drafters intentionally err on the side of redundancy" due to political interests. Abbe R. Gluck & Lisa Schultz Bressman, *Statutory Interpretation from the Inside—An Empirical Study of Congressional Drafting, Delegation, and the Canons (Part I)*, 65 STAN. L. REV. 901, 934 (2013). Invoking the rule against superfluities to interpret a statute would, in other words, typically be at odds with

9

how the statute was written and meant to be understood.[7] Similarly, Strzalkowski's suggestion that Congress "knows" how to include a broad set of political subdivisions, as evidenced by § 3(x), but intentionally did not do so in § 3(y) relies on the presumption of consistent usage, when in fact congressional drafters ignore that presumption in crafting statutes. *Id.* at 954; *see also* Anita S. Krishnakumar, *Cracking the Whole Code Rule*, 96 N.Y.U. L. REV. 76, 133–38 (2021). This is true even though drafters are aware that the presumption, which is an underlying component of the whole act rule, is frequently deployed by judges as a canon of statutory interpretation. Fundamentally, the canons are judicial *assumptions* about statutory meaning — guesses, in effect, that have some utility as default rules, but that may or may not accurately illuminate the meaning of a given statute or its intended effect. *See* Anita S. Krishnakumar & Victoria F. Nourse, *The Canon Wars*, 97 TEXAS L. REV. 163, 169 (2018). Here, neither canon referenced by Strzalkowski in support of his proposed interpretation of the statute reflects the reality of how federal statutes are written; attempting to clarify the definition of municipality using these canons alone would be misguided.

### B. Congressional Intent

The Court next turns to the purpose of the partial overtime exemption for firefighters. Pinpointing congressional intent can be helpful — sometimes necessary — for understanding the ordinary meaning of statutes, as words are rarely used devoid of context. *See, e.g.*, Kevin Tobia,

---

[7] Of course, some might argue that the rule against superfluities (and other canons of statutory interpretation subject to the same empirical critique) is not intended to explain what Congress meant in enacting a given statute, but rather as an interpretive principle that helps resolve ambiguous provisions, where they exist. As scholars have pointed out, that approach may explain the major questions doctrine, which has seen a recent resurgence despite being unmoored from textualist principles to the extent that it is intended to be "an epistemic aid to understanding the meaning of a past enactment." *See* Richard Re, *Does Textualism Defeat the Major Questions Doctrine?*, RE'S JUDICATA (Mar. 18, 2022), https://richardresjudicata.wordpress.com/2022/03/18/does-textualism-defeat-the-major-questions-doctrine/. Even so, applying the rule against superfluities does not make sense here, where the statute is better explained by clear evidence of congressional intent that adequately resolves any textual ambiguities. *See infra*.

10

Brian G. Slocum, & Victoria Nourse, *Ordinary Meaning and Ordinary People*, 171 U. PA. L. REV. (forthcoming 2022) (detailing empirical studies demonstrating that ordinary people do not always default to the dictionary definition of words). Here, Strzalkowski suggests that § 3(y) must be read in light of FLSA's "broad remedial intent" to ensure that laborers are paid fair wages. (*See, e.g.*, ECF No. 24 at 1). Mary Ann Township insists that that remedial intent cannot override a "fair (rather than a narrow) interpretation" of the FLSA exemptions, including the firefighter exemption. (*See* ECF No. 21 at 5 (quoting *Encino Motors LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2019))).

The § 7(k) exemption was adopted to allow fire departments (and police departments) to calculate overtime differently from the 40-hour overtime standard, in deference to the unique schedules associated with that work. *See Beebe v. United States*, 640 F.2d 1283, 1286 (Cl. Ct. 1981) (quoting H.R. REP. NO. 93-953 at 2864 (1974)); *see also* 145 CONG. REC. 11499–500 (1999) (statement of Rep. John A. Boehner) ("The firefighter exemption allows employees engaged in fire protection services additional scheduling flexibility in recognition of the extended periods that firefighters are often on duty."). Additionally, FLSA is a federal statute, applicable nationwide; the firefighter exemption applies in all fifty states, many of which use different names for their local governments. Given that background, this Court concludes that § 7(k) was intended by Congress to be applicable for the broad spectrum of local governments across the country that offer fire protection services, regardless of nomenclature or incorporation status. The applicability of the exemption should not depend on how a particular state labels its administrative subdivisions. *Cf. Babin v. Plaquemines Parish*, 2019 WL 5540269, at *1 (E.D. La. Oct. 25, 2019) (noting that "pursuant to § 207(k) of the FLSA, Plaquemines Parish firefighters are compensated differently because they are paid for their entire 24-hour shift, and

they receive overtime after 106 hours in a two-week period" even though parishes are not explicitly within the § 3(y) statutory language).

To limit the firefighter exemption to only incorporated municipalities (in addition to counties, fire districts, and states) would be illogical. After all, in large swathes of the country, fire protection services are provided by unincorporated local governments. In Ohio alone, 5,843,189 people lived in townships as of the 2020 census. There are 1,123 general townships in Michigan that are unincorporated, almost all of which provide fire protection services, *see* Bethany Prykucki, *Understanding Townships in Michigan*, MICH. ST. UNIV. (Nov. 19, 2014), https://www.canr.msu.edu/news/understanding_townships_in_michigan, and 1,246 towns in Wisconsin that are both unincorporated and required by law to provide fire protection services. *See* WISC. LEGIS. REFERENCE BUREAU, WISCONSIN BLUE BOOK 2021–2022 at 354–55, https://docs.legis.wisconsin.gov/misc/lrb/blue_book/2015_2016/400_framework.pdf. These examples demonstrate the ubiquity of unincorporated local governments, as well as the fact that they are often mandated to provide fire protection services and employ individuals working in "fire protection activities." Plaintiff's proposed interpretation of § 3(y) would mean that the fire protection departments covering nearly 50 percent of the population of Ohio — and large portions of other states — would not benefit from the § 7(k) exemption, or the scheduling flexibility that the exemption was intended to provide public fire agencies nationwide.

The adoption of 29 U.S.C. § 3(y) in 1999 supports the conclusion that the firefighter exemption must be understood expansively. Previously, the § 7(k) exemption applied to all full time firefighters employed by public agencies within the United States — an indication of the broad purpose of the provision. (*See* ECF No. 17 at 12). Strzalkowski suggests that § 3(y), which reads in full:

> "Employee in fire protection activities" means an employee, including a firefighter, paramedic, emergency medical technician, rescue worker, ambulance personnel, or hazardous materials worker, who—
>
> > (1) is trained in fire suppression, has the legal authority and responsibility to engage in fire suppression, and is employed by a fire department of a municipality, county, fire district, or State; and
> >
> > (2) is engaged in the prevention, control, and extinguishment of fires or response to emergency situations where life, property, or the environment is at risk.

was adopted to limit which fire departments fell under the umbrella of § 7(k), by replacing the previous "public agency" language with "municipality, county, fire district or State." But the legislative history indicates that § 3(y) was actually intended to expand the scope of § 7(k), by clarifying that the exemption covered technicians, paramedics, and other emergency services personnel who provided fire protection services. *See* 145 CONG. REC. H11500 (1999) (statement of Rep. John A. Boehner) (arguing that § 3(y) was needed to ensure that "firefighters who are cross-trained as emergency medical technicians, HAZMAT responders and search and rescue specialists would be covered by the [§ 7(k)] exemption even though they may not spend all of their time performing activities directly related to fire protection"); *id.* (statement of Rep. William Lacy Clay, Sr.). In fact, Congresssman Ehrlich, the sponsor of the legislation that adopted § 3(y), noted that he had proposed the bill precisely because courts had repeatedly interpreted the firefighter exemption too narrowly in exposing local governments to overtime liability for unpaid overtime to paramedics. *See id.* (statement of Rep. Robert L. Ehlrich, Jr.). The explicit purpose of the new language was to protect against "a dramatic increase in the local costs of fire protection to taxpayers nationwide." *Id.*; *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter (Jan. 16, 2009). But an increase in the local costs of fire protection to

13

taxpayers throughout Ohio, however, is exactly what would result from the narrow interpretation of § 3(y) that Strzalkowski proposes.

Additionally, there is no indication that Congress intended to restrict the set of public fire departments that could take advantage of the § 7(k) overtime exemption. In fact, congressional debate did not reference the "municipality, county, fire district or State" language at all, let alone suggest that the purpose of the amendment was to modify the scope of eligible public fire departments. *See generally id.* When the Department of Labor ("DOL") amended its regulations to implement 29 U.S.C. § 203(y) (the "2011 Amendment"), it quoted the new statutory language in § 3(y) in both the amended regulation and the accompanying commentary but provided no further elaboration or explanation. *See* 29 C.F.R. part 553, subpart c; *see also* Employees Engaged in Fire Protection Activities, 76 Fed. Reg. 18835, 18836 (Apr. 5, 2011). Contrary to Strzalkowski's assertion, the 2011 Amendment does not demonstrate an "express purpose [] to limit the exemption's application to only employees of municipalities, counties, fire districts, and States";[8] after all, it does nothing more than restate the statute itself. (ECF No. 22 at 4). And current DOL regulations still refer to the firefighter exemption as "provid[ing] a partial overtime pay exemption for fire protection [personnel] . . . who are employed by *public agencies*." 29 C.F.R. § 553.201(a) (emphasis added); *see also* U.S. Dep't of Labor, Wage & Hour Div., Opinion Letter, at 3 (Jan. 16, 2009) ("It is clear that Congress did not intend to preclude public agencies that are political subdivisions of a state from utilizing the partial exemption in section 7(k). Therefore, we believe section 3(y) includes firefighters employed by a 'public agency' that

---

[8] Strzalkowski also suggests that the 2011 Amendment removed 29 C.F.R. § 553.215(a) because the new statute narrowed the categories of local governments whose fire departments qualified for the § 7(k) exemption. That is not the case: the regulation was removed because it allowed ambulance and rescue service employees to be treated as employees engaged in fire protection activities, contrary to the statutory language in § 3(y). *See* Employees Engaged in Fire Protection Activities, 76 Fed. Reg. 18835, 18836 (Apr. 5, 2011).

is a political subdivision of a state under section 3(x)."). In short, the DOL's implementing regulations do not contradict an understanding of § 3(y) that includes Mary Ann Township as neither the amended regulation nor the accompanying commentary provides any explanatory language of the statutory text.

* * *

Ultimately, it is clear to this Court that § 3(y) was not intended to exclude the numerous unincorporated local government units across the United States that provide fire protection services to their residents. The language of the statute is ambiguous as to the question of incorporation: as noted, whether the definition of municipality includes only incorporated local governments depends on the dictionary one cites. But Congress created the § 7(k) exemption for public fire protection personnel, in acknowledgement of the unique schedules that firefighters work, and added the § 3(y) definition to expand, not limit, the scope of the firefighter exemption. A fair reading of Congress's intent leads to the inescapable conclusion that Mary Ann Township is a municipality under 29 U.S.C. § 203(y) and is authorized pay its firefighters according to the partial overtime exemption in 29 U.S.C. § 207(k).

### IV. CONCLUSION

For the reasons set forth above, this Court **GRANTS** Defendant's Motion for Summary Judgment (ECF No. 17) and **DENIES** Plaintiff's Motion for Summary Judgment (ECF No. 18).

**IT IS SO ORDERED.**

ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE

**DATE: January 11, 2023**